UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ARMOND BENNETT | * | CIVIL DOCKET |
| | * | NUMBER: 15-3087 |
| | * | |
| VERSUS | * | |
| | * | |
| RONAL SERPAS, INDIVIDUALLY AND | * | SECT. |
| IN HIS OFFICIAL CAPACITY | * | |
| AS FORMER SUPERINTENDENT OF | * | JUDGE |
| NEW ORLEANS POLICE DEPARTMENT; | * | |
| MICHAEL HARRISON, CURRENT | * | MAG. |
| SUPERINTENDANT OF NEW ORLEANS | * | |
| POLICE DEPARTMENT; NOPD OFFICER LISA | * | |
| LEWIS; NOPD OFFICER PATRICK GUIDRY; | * | |
| NOPD OFFICER LUCRETIA GANTNER; | * | |
| CITY OF NEW ORLEANS. | * | . |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **COMPLAINT**

NOW COMES the Plaintiff, **ARMOND BENNETT**, through undersigned

counsel, and respectfully represents:

### I.      **Jurisdiction**

1.      This action is brought pursuant to 42 USC §§ 1983 and 1988.  Jurisdiction is

founded on 28 USC §§1331 and 1343, and the Fourth and Fourteenth Amendments to the

Constitution of the United States.  Plaintiffs also invoke supplemental jurisdiction over

claims under state constitutional and statutory law.

### II.      **Parties**

(Plaintiff)

2.      **ARMOND BENNETT** is an adult citizen of the State of Louisiana and is

domiciled in the Eastern District of Louisiana.

(Defendants)

**Named defendants herein are:**

3.      **RONAL SERPAS**, in his individual and official capacity as former Superintendent of the New Orleans Police Department (NOPD), was, at all times herein, an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.

4.      **MICHAEL HARRISON**, in his individual and official capacity as current Superintendent of the New Orleans Police Department (NOPD), is an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.

5.      **NOPD OFFICER LISA LEWIS**, in her individual and official capacity as an officer of the New Orleans Police Department (NOPD), is an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.  At all times herein, defendnat Lewis was acting within the course and scope of her employment by the City of New Orleans as an NOPD Officer.

6.      **NOPD OFFICER PATRICK GUIDRY** in his individual and official capacity as an officer of the New Orleans Police Department (NOPD), is an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.  At all times herein, defendant Guidry was acting within the course and scope of his employment by the City of New Orleans as an NOPD Officer.

7.      **NOPD OFFICER LUCRETIA GANTNER** in her individual and official capacity as an officer of the New Orleans Police Department (NOPD), is an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.  At all times herein, defendant Gantner was acting within the course and scope of her employment by the City of New Orleans as an NOPD Officer.

8.    **CITY OF NEW ORLEANS**, a municipal corporation capable of suing and being sued, and located within the Eastern District of Louisiana.

### III.    Factual Allegations

9.    On or about August 1, 2014, defendant **LEWIS** and her partner that night, defendant officer **GANTNER**, pulled over plaintiff Bennett while he was driving his brother's car.  Plaintiff was dressed in his uniform for work as a security guard.  The alleged basis for the stop was a partially obscured license plate with only one light.

10.    Defendants **LEWIS** and **GANTNER** asked for Mr. Bennett's license and registration.  Mr. Bennett complied or attempted to comply with all of the officers' requests, and he answered their questions in a forthright way.  He provided **LEWIS** with his license and was looking for the registration.  He explained to the officers he was having trouble finding it because it was his brother's car.

11.    As Mr. Bennett was looking for the registration, defendant **GANTNER** began asking him questions regarding a gun holster in the back seat.  Mr. Bennett explained that he did not have a weapon in the car with him, but that he was a security guard at Davita Dialysis and was supposed to carry a weapon in that capacity.  He had in fact been pulled over in the Davita parking lot.

12.    Defendant **LEWIS** then asked Mr. Bennett to step out of the car and place his hands on the roof of the vehicle.  Mr. Bennett again stated that he was looking for the registration for the vehicle, as the officers had asked.  Defendant **LEWIS** then told him to go ahead and get out of the car, and asked him to leave his cell phone in the car.  Mr. Bennett then started to comply.  He unbuckled his seat belt and opened the door of his car

while he continued to attempt to return the papers and cell phone to the center console of the car.

13.    Although Mr. Bennett had been cooperative and polite to the officers throughout the stop, defendant **GANTNER** suddenly drew her weapon and started shouting for Mr. Bennett to show his hands.  Defendant **LEWIS** also drew her weapon, demanding that Mr. Bennett stop what he is doing.  Mr. Bennett complied with defendant **LEWIS's** order and stopped moving, and withdrew his hand from the center console.

14.    Mr. Bennett was confused and terrified by this sudden escalation in the traffic stop.  He attempted to explain to defendant **LEWIS** that he did not have anything on him to concern the officers.  In response, defendant **LEWIS** grabbed Mr. Bennett by the hair and then by his left wrist with a gun drawn in his face.  She then pulled Mr. Bennett out of the car.  Terrified, Mr. Bennett ran away from the officers in fear of his life.  As he did so, on information and belief defendant **LEWIS's** police radio fell from her utility belt and sustained minor damage.

15.    At no point during this encounter did defendants **LEWIS** and **GANTNER** observe Mr. Bennett with a firearm.  In fact, Mr. Bennett never possessed a firearm during this encounter.

16.    A drug dog later searched the car Mr. Bennett had been driving in.  According to police reports, the dog alerted to a small plastic bag allegedly containing marijuana residue located in the car.  It was also discovered that Mr. Bennett had warrants out for him for failure to pay traffic tickets in Jefferson Parish.

17.    Despite never seeing Mr. Bennett with a firearm, defendant **GANTNER** later swore out a false arrest warrant affidavit stating that both she and defendant **LEWIS** had

observed Mr. Bennett with a gun during this encounter.  Defendant **GANTNER** used this false allegation to justify a charge of carrying a firearm while in possession of an illegal substance, in violation of LA R.S. 14:95E.  A violation of R.S. 14:95E is a serious felony, carrying a mandatory minimum penalty of five years imprisonment without benefit of probation, parole, or suspension of sentence.  Defendant **GANTNER's** warrant affidavit also requested misdemeanor charges of possession of marijuana and simple damage to property, based on the marijuana allegedly found in the car and the damage to defendant **LEWIS's** radio.  On August 2, 2014, a commissioner of the New Orleans Magistrate Court signed the arrest warrant for Mr. Bennett.

18.     Approximately ten days after this interaction with defendants **LEWIS** and **GANTNER**, in the early morning hours of August 10, 2014, Mr. Bennett and his brother were returning to his brother's home on the West Bank of New Orleans.

19.     When Mr. Bennett and his brother arrived at their house, they saw an NOPD cruiser parked on the block, which began to creep towards them.  Defendants **LEWIS** and **GUIDRY** got out of the car with guns drawn and approached Mr. Bennett and his brother, who both had their hands up and visible to the officers.  Defendant **LEWIS** pulled open Mr. Bennett's door and ordered him to get out of the car.  He complied with this order with his hands up.

20.     Suddenly, and without reason, justification, or provocation, defendant **LEWIS** pulled the trigger on her weapon and shot at Mr. Bennett.  Mr. Bennett had done nothing to provoke this use of excessive and deadly force.  Scared for his life, Mr. Bennett began to run away from defendant **LEWIS**.  He stumbled almost immediately, and on information and belief defendant **LEWIS** fired a second time at Mr. Bennett.  Again,

there was absolutely no reason or justification for this excessive and potentially deadly use of force.

21.     One of defendant **LEWIS's** shots struck Mr. Bennett in the head.  Thankfully, the bullet only sliced across his scalp, and did not penetrate his skull and kill him.  Mr. Bennett was able to run to his uncle's house, where his uncle was able to call emergency services for Mr. Bennett.

22.     On information and belief, both defendants **LEWIS** and **GUIDRY** were wearing body cameras supplied by the NOPD.  NOPD regulations required that the body cameras be turned on whenever officers interacted with the public.  However, on information and belief, on the night of August 10, 2014, neither of these officers turned their body cameras on to record the interaction with Mr. Bennett.

23.     On further information and belief, these defendants were also in an NOPD cruiser equipped with a dashboard camera.  This camera, too, was switched off so that none of defendant **LEWIS's** excessive force could be recorded.  On information and belief, defendant **GUIDRY** did nothing to stop **LEWIS** from engaging in the excessive force described above, despite having the opportunity to do so.

24.     After defendant **LEWIS** shot him in the head, Mr. Bennett spent four days at Interim LSU Hospital, including two days in the ICU as a result of the shooting.  During his time at the hospital he underwent treatment for the gun shot wound to his head.  When he arrived at the hospital he was not responsive to verbal stimuli and unable to speak.  He was bleeding profusely and had to have staples placed in his head to stem the bleeding.  His condition was so unstable that he had to be intubated to assist his breathing.

25.     While he was in the hospital recovering from the shooting, Mr. Bennett was deeply concerned about where he would go upon discharge from the hospital, particularly when he was informed that he would be moved to the jail.  His anxiety began to manifest as physical symptoms, causing paralysis in his extremities and difficulty voiding urine. After four days of assessment, Mr. Bennett was routed directly from the hospital into Orleans Parish Prison.

26.     One of the charges Mr. Bennett was booked on was the false felony charge accusing him of violating 14:95E.  In order to obtain release from jail, Mr. Bennett was required to post a bond on that charge in the amount of $10,000.

27.     Ultimately, all charges against Mr. Bennett arising out of the August 1, 2015, traffic stop were dismissed by the Orleans Parish District Attorney's Office.

28.     On information and belief, defendants **LEWIS** and **GUIDRY** attempted to conceal defendant **LEWIS's** use of excessive force by concocting a false and misleading story regarding what happened during their encounter with Mr. Bennett on the night of August 10, 2014.  On information and belief, these defendants falsely claimed that they only heard gun shots in the area, not that defendant **LEWIS** had unjustifiably fired her gun twice at Mr. Bennett for no good reason.  Alternatively, these defendants may have falsely claimed that Mr. Bennett fought with defendant **LEWIS** and/or committed other acts that allegedly justified her use of force.  Such assertions, if they were made, were untrue, as these defendant officers well knew.

29.     This behavior is consistent with past behavior of defendants **GUIDRY** and **LEWIS**.  In May and August 2013, defendant **LEWIS** had multiple allegations of inaccurate reporting and complaints about her honesty and truthfulness.  These

complaints were still pending investigation in 2014.  Additionally, defendant **LEWIS** had multiple citizen initiated complaints regarding her professionalism extending back to 2009.

30.     Defendant **GUIDRY** has a similarly problematic history, including three documented uses of force, at least four complaints regarding his professionalism and neglect of duty, and three citizen initiated complaints over the course of 2013.

31.     Defendants **GANTNER's**, **GUIDRY's**, and **LEWIS's** behavior in this case is not an isolated occurrence in the New Orleans Police Department.  Fabrication of evidence, dishonesty, and excessive use of force as demonstrated by defendants **GANTNER**, **GUIDRY**, and **LEWIS** in their interactions with Mr. Bennett are specific examples of the "patterns and practices of unconstitutional conduct and/or violations of federal law" that the United States Department of Justice cited in its March 16, 2011 findings letter to New Orleans Mayor Mitch Landrieu.  A Third Quarterly Monitoring Report, dated August 31, 2014, and created pursuant to a consent decree under which the NOPD currently operates, reflects that NOPD has not achieved compliance with many key use of force reporting provisions of the decree, suggesting that both excessive use of force and failure to properly report uses of force continue as significant cultural problems for the NOPD.

32.     Furthermore, neither defendant **SERPAS** nor defendant **HARRISON** took appropriate action to re-train or otherwise address the history of misconduct of the defendant officers in this case.

33.     The above-described actions were intentional, malicious, and plainly calculated to violated Mr. Bennett's civil rights and cause him harm.  Solely in the alternative, the plaintiff alleges that the actions described above were reckless and/or negligent.

### IV.     Causes of Action

34.     Plaintiff was the victim of false arrest, detention, and imprisonment because of the false arrest affidavit created by defendant **GANTNER** and supported by defendant **LEWIS**.  Defendants **GANTNER's** and **LEWIS's** actions in this matter violated Plaintiff Bennett's rights under the Fourth and Fourteenth Amendments of the United States Constitution.  **GANTNER** and **LEWIS** acted under color of law when violating Plaintiff Bennett's rights.

35.     Plaintiff was also the victim of excessive force against his person by defendants **LEWIS** and **GUIDRY**.  **LEWIS** and **GUIDRY** also participated in conspiracy to conceal violations of plaintiff Bennett's civil rights.  **LEWIS** and **GUIDRY** violated Plaintiff Bennett's rights under the Fourth and Fourteenth Amendments of the United States Constitution.  Despite the opportunity to do so, **GUIDRY** failed to intervene to stop **LEWIS's** use of excessive force.  **LEWIS** and **GUIDRY** acted under color of law when violating plaintiff Bennett's rights.

36.     Defendants **CITY OF NEW ORLEANS**, **RONAL SERPAS,** and/or **MICHAEL HARRISON**, in their official capacities, have exhibited a policy, practice, and/or custom of callousness and reckless disregard for the civil rights of residents like the plaintiff in their failure to adequately screen, hire, train, supervise, and/or discipline employees and police officers.  These defendants have also exhibited a policy, practice and/or custom of concealment of civil rights violations.

37.    Plaintiff Bennett was also the victim of false arrest, assault, battery, wrongful/ malicious prosecution and/or negligence causing injury by defendants **LEWIS**, **GANTNER**, and **GUIDRY** under Louisiana state tort law.  Plaintiff Bennett respectfully requests this court to exercise its supplemental jurisdiction over these claims, which arise out of the same facts as the above-described civil rights claims.

38.    At all times relevant hereto, defendants **LEWIS**, **GUIDRY**, and **GANTNER** were acting within the course and scope of their employment with **CITY OF NEW ORLEANS**, **RONAL SERPAS,** and/or **MICHAEL HARRISON**.  Therefore, the doctrine of respondeat superior applies for all state-law torts alleged in this Complaint and defendants **CITY OF NEW ORLEANS**, **RONAL SERPAS,** and/or **MICHAEL HARRISON** are liable to the plaintiff for the tortious acts of their employees.

39.    The **CITY OF NEW ORLEANS**, **RONAL SERPAS,** and **MICHAEL HARRISON** are liable to the plaintiffs for failing to properly train and supervise **LEWIS**, **GANTNER**, and **GUIDRY**.

40.    Defendants are liable jointly, severally and in solido.

### V.    Damages

41.    As a result of the above described events, plaintiff was deprived of his civil rights and endured severe physical and mental pain, suffering, anguish and distress.  Plaintiff seeks compensatory and punitive damages.

42.    Plaintiff was forced to pay a bondsman in order to secure release from wrongful incarceration, and seeks just compensation.

43.    Plaintiff seeks to recover compensation for any and all medical bills arising from the unjustified shooting.

44.     Plaintiff seeks reasonable attorneys fees in accordance with 42 USC § 1988, plus

judicial interest, and for defendants to bear all costs for these proceedings.

**WHEREFORE,** the plaintiff, **ARMOND BENNETT** prays that the defendants

be duly cited and served copies of the above and foregoing, made to timely appear and

answer, that the Court exercise its supplemental jurisdiction over the state law claims,

and after due proceedings are had that there be a judgment in his favor and against

defendants, **RONAL SERPAS,** in his official capacity, the **CITY OF NEW**

**ORLEANS, LISA LEWIS, LUCRETIA GANTNER, and PATRICK GUIDRY**,

holding them liable jointly, severally, and in solido for all compensatory and punitive

damages alleged herein, together with judicial interest, for all attorneys' fees, and that the

defendants bear all costs of these proceedings, and for all further legal, equitable, and

general relief available.

Respectfully submitted,

/s/ Stephen J. Haedicke

_____
**STEPHEN J. HAEDICKE** (Bar Roll No. 30537)
Law Offices of Stephen J. Haedicke, LLC
639 Loyola Ave. #1820
New Orleans, LA  70113
(504)525-1328 Telephone
(504)910-2659 Fax
haedickelaw@gmail.com

/s/ Elizabeth Cumming_____
**ELIZABETH CUMMING (**Bar Roll No. 31685)
Trial Attorney
316 S. Dorgenois Street
New Orleans, LA 70119
(504) 822-4455 Telephone
(504) 822-4458 Fax
ecumminglaw@gmail.com

*Attorneys for Plaintiff*